I'll hear argument next in Case 16-605, the Town of Chester v. Laroe Estates. Mr. Katyal. Katyal, Mr. Chief Justice, and may it please the Court. Had Laroe filed a lawsuit against the Town of Chester, it would have been dismissed for lack of standing. However, Laroe claims that because it sought intervention under Rule 24a2, that things are different. That's wrong. An intervener of right is a full-blown party and can invoke the full suite of powers of the Federal judiciary from subpoenas to summary judgment. But standing is not dispensed in gross, and those invocations of judicial power must be grounded in Article III, and that is particularly so because of two key facts. First, Rule 24a2 situates interveners in a different position from regular plaintiffs, insofar as interveners only must show that the existing parties don't adequately represent their interests. So it is absolutely foreseeable that an intervener will adopt a different position than the parties in the case and invoke Federal judicial power. And second, like here, when the party challenges the standing of an intervener in district court, that court does not abuse its discretion when it conducts the standing inquiry. This rule is efficient. It avoids all sorts of contingent derivative interests. Ginsburg. And it sets up a difference between intervening on the defendant's side and the plaintiff's side. Intervening on the defendant's side under your scheme, that's easy, but not on the plaintiff's side. And why should there be that disuniformity? Yeah. I don't know that there is any sort of disuniformity. The first thing I'd say is, Justice Ginsburg, you know, this case involves a plaintiff intervener, and some of the defendant intervener standards and stuff does get a little meta, and I don't know that you have to reach it here. But if you were to reach it and you were to ask, I'd say that the inquiry would be essentially the same. This Court in Hollingsworth v. Perry basically gave us that test for what that is. And it said in Hollingsworth, ordinarily we think of standing as something about plaintiffs, but it's also true about defendants, too. And when a defendant on appeal is trying to bring an appeal or something like that, the question is, is the judgment below creating some sort of concrete harm to them? And we think that same test applies here. It applies to both plaintiffs and defendants. Agree that sometimes it gets a little bit difficult in the application. It's very easy to see how it applies for plaintiffs, a little more difficult for defendants. But we aren't saying that the rules should be different. Ginsburg. Ginsburg. You're saying that an intervener must have the same standing as a plaintiff would have. And that hasn't been the understanding in the courts or the commentators. You're probably familiar with the intervention commentary by David Shapiro in which he said it should go without saying it must be understood that there is a difference between the question whether one is a proper plaintiff or defendant in initial action and the question whether one is entitled to intervene. So we think with respect to A2 interveners, they are full-blown parties. That's what this Court in Eisenstein said. And for those folks, they do have to show the same type of standing as a plaintiff. That doesn't mean that they have to show the exact same standing. They could have a different injury than a plaintiff in a given case. But they are going to exercise, Justice Ginsburg, the full suite of powers. And it doesn't make sense to say that they should be off the hook for a second. How about permissive interveners? Permissive interveners are absolutely different, as our brief explains, because 24b allows Federal courts to impose all sorts of restrictions on them. And so a good example is this Court's decision in Stringfellow in which the whole complaint by the intervener before this Court was, hey, you know, I want to exercise the full-blown rights of a party. This district court only gave me 24b permissive intervention and imposed restrictions on, for example, discovery. And they said, they came to the Court and said, that wasn't fair, we should have been a full party. And this Court rejected that. And Justice Brennan's opinion tracked, his concurring opinion tracked that of the majority in saying, essentially, courts have, Federal courts have all sorts of powers over permissive interveners that they don't. They can restrict discovery, they can restrict claims, all sorts of that. That's not true for full-blown party status. Now, one last piece, Justice Ginsburg. It is the case that some permissive interveners under 24b do have standing. And for those folks, they can exercise, again, the full suite of powers as long as there's no restriction on them put on them by the Federal court. But there's no Article III problem with that. Breyer, you're wrong with doing this. Say, think of a party wants a court to do something. You can't invoke a court's power to do something, including an appellate court, unless you have standing. To say an intervener who wants the court to do no more than what the plaintiff or, in an appropriate case, the defendant, wants them to do does not need standing. But where an intervener wants a court to do something different, then he does need standing, in which case it would save the court lots of trouble if there are many interveners. You wouldn't have to look into the standing, or you would if and only if they want the court to do something different. So, Justice Breyer, we agree with much of that. So the question is, in your question about what an intervener is, we agree that everything you said makes sense for permissive interveners. But for an A2 intervener, the reason they're coming to the court, as I was saying at the outset, is because they disagree with what the parties are doing. I think it's inadequate. But they disagree, perhaps, with the argument. The lawyer, amazingly, thinks he's a better lawyer than the one who's already there. And so he thinks he can make a better argument. Correct. But if he doesn't want anything different than what they've already asked for, why does Article III insist that he have standing? Justice Breyer, I'm unaware of anyone who thinks that they're somehow a better lawyer than someone else who doesn't think that they would have a different take with respect to claims, relief, discovery, jury trial. A different take, but this very case, this very case, he may want nothing different. All he may want is that the town gives the plaintiff the money, and then he will make his own case to say, I'm equitably entitled. Well, let's take this very case. So the cert petition at page 5 said, look, discovery, subpoenas, these are all very important parts of civil litigation. Our entire blue brief is all about that. They don't disclaim anything except claims and relief. Even that I think there's an asterisk about, but which I'll explain in a minute. But everything about the trial strategy, they haven't disclaimed any of that. And that's true about interveners. In which case, yes, you need standing, too, and everything else on the other hand. In which case, there's somebody withstanding who has those claims, who seeks that relief, so the court is doing exactly what the court has authority to do, but this intervener can contribute to the way the court is thinking about the case. So for two reasons. One is this Court's decision in United States Catholic in 1988, in which the Court said, quote, the subpoena power of a court is subject to those limitations inherent in the body that issues them, because of Article III. That is to say that subpoenas, all the discovery things, the only way a court can act is with Article III. That is particularly so when you're thinking about discovery. There have been opinion after opinion of this Court, from Iqbal to Twombly to Justice Sotomayor, that discovery is becoming the ball game in litigation. And if you don't confine Federal courts to their lane, as Article III does, and allow bystanders, sometimes ideological bystanders, who don't have Article III standing, you are imposing the using the massive power of the Federal courts. Sotomayor, I'm totally confused with the permissive and automatic. If it's okay to do all of this with permissive interveners, and all of the subpoenas and all of the discovery and other burdens that you're talking about, why isn't it okay to do it with automatic interveners who are limited to only the claims and relief that the plaintiff has asked for? Why is there some sort of added burden with respect to automatic that doesn't exist with respect to permissive? I might not have been clear. It's not about the label. It's about the function. That is, if a permissive intervener is seeking discovery, is seeking subpoenas, is seeking to invoke the Federal judicial power, they must have standing. My only point is, the types of people that Justice Breyer is positing, the people who say, hey, I'm just a better lawyer, I'm going to do the exact same stuff, claims, relief, or so on, those are permissive interveners, or they are amici, and they don't need to show standing in order for them to participate in the life cycle of the case. That's often how participants do it. Roberts, does it matter to you at what point the Article III determination you say is required is made? I mean, I would think that why would it be necessary to do that at the outset? Why wouldn't it be when you get an intervener who decides, certainly if he's going to raise a different claim, but also is the one, and the plaintiff is not the one, imposing particularly burdensome discovery, can you wait until then when the other party objects and say, well, now I've got to look at your Article III standing because you're doing something that changes the litigation? Mr. Chief Justice, we don't think we have to win that by any stretch. We certainly think that the what matters more than the one, the what being that whenever Federal judicial invocations of power, be it subpoenas or summary judgment, is invoked, that's when Article III standing is required. With respect to timing, we do think that the best course of action, for a bunch of reasons, is to do that at the outset. But, you know, you don't have to reach that here. Here the district court did, and my friend on the other side would have to convince you that that's somehow an abuse of discretion, which I think is a very hard thing to do, in order for you to reverse the decision below. But here are some reasons why I think that threshold inquiry makes sense at the front end. One is the Federal court's already reviewing the 24A2 standards at that point, and it's a very closely analogous, if not exactly identical, set of questions, and so it makes sense to do it all in one piece rather than doing it separately. Second, as my friend on the other side's brief admits, there's no guarantee that that later inquiry will even happen. Indeed, his brief at page 30 admits that they kind of hope it doesn't happen, that some extrict-related claims will come in. And that's particularly so when it comes to, for example, Federal Rule of Civil Procedure 45 subpoenas, as to which the Court doesn't often even find out about. They're just issued and the power of the Federal court is invoked, and so there might not be that later testing that would occur unless you do it right at that front end. If it is the and the statute that provides for intervention of right for someone who doesn't satisfy Article III, there are several statutes that do provide for intervention of right. So I think that it depends on what intervention means. If a statute provides for full-blown party status for someone who lacks the components of Article III, that, to me, every day of the week is unconstitutional and that is precisely what they are advocating for. That's what we say in each one of our applied briefs. Kennedy, it could be conditioned on there being a party withstanding remaining in the suit. And I think the fact that there's a party withstanding remaining the suit, I don't think it totally does, Justice Kennedy. It may solve part of the problem, but to the extent that that person in that statute is invoking Federal judicial power in a way different from what that party withstanding in the suit does, that flouts Article III. This Court has said in Daimler-Chrysler, standing is not dispensed in gross. And the idea that just because you have one plaintiff withstanding, that allows someone else, an intervener, to invoke the Federal judicial power in all sorts of other ways, I think that would be a pretty good one. Kagan, putting interveners aside, suppose ten plaintiffs got together and brought a suit, so they were all joined in the same suit. And the district court satisfied itself that one of those plaintiffs had standing, that there was a proper case in controversy before the Court, that nobody else was asking for anything else or making any other claims. Does the district court have to go plaintiff by plaintiff by plaintiff by plaintiff sua sponte and decide whether each of them has standing? They do not, Justice Kagan. And the reason why, and this is what I was saying at the outset, is that interveners, A2 interveners, are situated differently from those plaintiffs, because plaintiffs generally march in lockstep. They file the same complaint. They're all on it together. They don't have to certify to the Court and prove inadequate representation of the existing parties. And so if you look, for example, at their brief, the one case they cited. Kagan But this seems very odd, that you can be an actual party, and presumably you can do all of these things, you can do your own discovery, you can do and that's fine with you, but if your name is an intervener, then it becomes not fine. Katyal Well, I think that, you know, to the extent that some party didn't have standing, it might be tested at that point. I just think the case for threshold standing inquiries, akin to what I was saying to the Chief Justice, I think is different for parties precisely because you can presume that parties do march in lockstep. And here's a very good example. The only case that they cite in their brief for when plaintiffs don't march in lockstep is a case called Archer. And when you go back and look at that case, those parties filed the exact same discovery requests. And that's generally how civil litigation unfolds with coplaintiffs. It's very different when you're talking about interveners. The Solicitor General, the nation's largest litigant, at pages 2 and 18 and 23 say that interveners, it's extremely likely that interveners do deviate in terms of their invocations of judicial power from the existing parties. You can't say that about coplaintiffs. Alito, I was trying to understand the universe of cases in which a party, someone seeking intervention would be able to come in under 24A2 by claiming an interest relating to the property or transaction, but would not be able to claim injury in fact. And I found it difficult to identify that universe of cases. And then I said, well, this is one of them. This case must be one of them. But actually, it doesn't seem to me that Lareau has Article III standing. Now, Lareau may not be the – may not be entitled to recover under the takings clause, but why is there not Article III standing here? If it's in fact Lareau has a mortgage where an equi – is an equitable owner of the property, isn't that enough for injury in fact? We don't think it is. So two things. Why not? First is, we do think that the rule tracks Article III, and they basically move coextensively. And second, with respect to the facts here, a contingent interest like this one, contingent on zoning approvals and so on, isn't enough for Article III, just as it wouldn't be – I mean, if you adopt their position, you were – I could take out a derivative on the outcome of the case that you heard today in the first hour, Perry v. MPSB, and bet a million dollars on who's going to win in the district court. That would allow me intervener status under the rule and under this view of Article III, and then allow me to be a full-blown party. That can't possibly be – Kennedy, it's almost as if I had the same trouble with Justice Alito did. I don't know why this party doesn't have standing, because at the end of the day, if there's a regulatory taking, he's going to say, and incidentally, that takings award is mostly mine. Now, do we just take this case on the assumption that there's no standing? I do think that's the way the case comes to the Court, and, you know, I think this kind of contingent speculative interest would flunk this Court's precedents about Article III, particularly Clapper. Justice Alito's point, if as a practical matter you have an interest to protect, that almost sounds like a shorthand for standing. I completely agree that the rule and Article III track the same thing. If I may, Your Honor. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. The best reading of Rule 24a2 is that it requires an intervener as of right to demonstrate that he has Article III standing by showing that he has a cognizable interest, an interest that is cognizable under Article III and that could be impaired by the disposition of the pending lawsuit. I'd like to start where Justice Ginsburg started by focusing on how it works, sort of how you establish standing when you're talking about interveners and particularly defendant interveners. Like Justice Ginsburg, most of the courts of appeals that have held the other way, have held that standing is not required, have focused on whether an intervener can establish standing to initiate a lawsuit. But in our view, that is not the appropriate focus. What the rule itself focuses on is whether an intervener could be injured by the disposition of the pending lawsuit. And so it's much more like asking whether a party has standing to appeal than it is like asking whether a party would have standing to initiate a lawsuit. What you look at is whether there is a particular outcome of the lawsuit that one of the parties is trying to obtain, and you ask if that outcome happened, would it injure the intervener, the potential intervener, such that that person, the intervener, would have standing to appeal. And so it's the same whether you're talking about a plaintiff or a defendant. Now, they have to have an interest that's related to the underlying dispute, but their injury comes from the disposition of the lawsuit. Roberts In what sense, if any, is your position different from that of the Petitioners? I think it's not particularly different. You know, I think they take sort of a stronger line than we do on the constitutional question. Our view is that you could imagine – I think everyone here agrees that there are some things a party, a litigant would do that don't require standing, like presenting oral argument, filing briefs. There are some things that do require standing, like seeking damages, filing a new claim. In our view, there are some other things in the middle that are kind of fuzzy. In our view, as a theoretical matter, you could imagine a system where a person could easily obtain the label intervener, and then a court could later inquire into that intervener's standing if and when they did something that would require standing. We think as a matter of reading the rule, that the rule, that the drafters of the rule have required that inquiry up front. We think the requirements of Rule 24a2 are best read to map on to the Article 3 requirements Why did they bother? Why would they bother? If the only issue is standing, totally different language was used by the rule drafters. Well, I don't think they track very well, because to require standing you need immediacy of effects, and in a lot of these intervener cases, it's very clear that part of the interest in the property is a contingent one. If the person loses the property, my interest will be destroyed. That's very contingent and not likely to permit standing in a lot of situations. So there's sort of two parts to your question. The first on the text, it's true that the text doesn't track the modern parlance of standing, but this rule was drafted, was adopted in 1966, which is before this Court's cases in, like, Sierra Club and Defenders of Wildlife were important. Well, just right. I mean, given that that's true, do you think or are you saying that Congress had it in mind to track the requirements of standing, whatever they turned out to be? Because, of course, the standing doctrine in 1966 was nothing like what it is now. It was different, but the standing doctrine and intervention rules have always required that an intervener or a party have an interest, and this Court, going back to the beginning of the 20th century, had said that an interest that is contingent or hypothetical is not sufficient for intervention, just like it had said it's not Now, the predecessor to the 1966 version of the rule allowed intervention as of right if a party would be bound by the judgment or if a party had an actual interest in property that was going to be distributed by the Court. I think it's clear that both of those sets of people would have had standing, and so that's kind of the people that I think the rule drafters had in mind. There certainly are. Breyer, What can I read? Probably, I don't know, where I begin to get a kind of blank, is defendant's standing. I can see defendant standing on appeal, et cetera, but forget it. What about on the initial thing? When does a defendant – are there any cases? Is there a good article? When does a defendant have or lack standing? That's where I tried to start. I think the focus of the rule is on injury from the disposition of the lawsuit. And so what you would ask is, when you're talking about a defendant, if the plaintiff gets what it wants, will that harm the defendant? And I think it's natural to say, will it harm it in a way that would give it standing to appeal? And so what the defendant is trying to do is, instead of waiting until that point, it's trying to come in and prevent the injury. So this goes to the second part of Justice Sotomayor's question about the imminence and the Respondent says – Breyer, and that gives a defendant standing to get depositions, to ask for subpoenas and so forth? Right. So if the intervener could be harmed by what the plaintiff wants in such a way that the intervener would have standing to appeal, then the intervener sees this injury coming down the road. This is an actual pending lawsuit, and so there's an imminent injury that's coming the way of the defendant, of the intervener, pardon me, and so the intervener wants to get involved and protect his interest. Mr. Harrington, I really get confused when you invoke the doctrine of constitutional avoidance. So as I understand it, you're saying, well, all right, Rule 24 is old and Lujan's new, so let's match them up. And any ambiguity we ought to just ignore or construe in your favor because of the doctrine of constitutional avoidance. But the upshot of applying the doctrine here to avoid the question whether interveners have to have Article III standing would be that we'd have to ask the Article III question effectively through the guise, admittedly, of Rule 24 in every single case. So to avoid the constitutional question once, we have to ask it every single time hereafter. Is there a precedent for applying that doctrine in quite that way? Let me, if I can, take the air out of this by saying I will concede that my friend, Mr. Doreski, has very ably pointed out the flaws in our constitutional avoidance argument, and I'm not pressing that argument here. Roberts. I appreciate the candor of that concession. Yes. He's a very capable lawyer and has proven himself so with respect to that argument. So we're not pressing that argument here. A couple of questions. Ginsburg. Can I ask you the same question that I asked Mr. Cattrall? Could Congress pass a statute that said, gives someone a right to intervene, someone who would not have Article III standing? Yes. I mean, I think Congress has done that with a number of statutes. I think in those cases, the intervention would be, you know, those interveners would not be permitted to do something that would require standing without a subsequent assessment of the standing of those interveners. So, you know, in this case, as in many cases, I think the point of the intervener's attempting to intervene is that it wants to get damages. Well, you can't get damages if you don't have standing. And so even if he prevails here, there's going to have to be some showing at some point down the road that he is standing to get damages. I'm not sure I understood your answer to the question. You said this person does not have to show standing, Article III standing in the first instance, but if she tries to do something different than what the plaintiff is doing, she does? Yes. I mean, I thought the question was if there was a setting aside Rule 24a, if there was a statute that authorized intervention and didn't map onto that. Right. There are several statutes. Yes. So our view is as a constitutional matter, again, you could have a system where you could easily get the label of intervener, and then a court could later inquire into your standing if and when you did something that required standing. We think Rule 24a2 is best read to require that standing up front. And for some of the reasons that Mr. Katyal was saying, that's because the rule requires an intervener to show that their interests are not adequately represented by existing parties and that they're going to be injured. So you think it is satisfactory to say that it satisfies the constitutional requirement of standing if Congress says you have standing? No. No. The question was if Congress says a party can intervene as of right and doesn't require a showing of standing, we don't think that is a violation of the Constitution as long as you don't let that intervener later do something that requires standing without then asking for a showing. You have to go into that here. No. You don't have to go into that. There have been a couple of questions about sort of piggyback interveners, and I think you have to keep in mind that there's Rule 24b, which allows permissive intervention, and permissive intervention expressly contemplates that a party has claims, has legal questions or factual questions in common with existing parties. And I think if a person just wants to come in and say, oh, yeah, I have the same kind of claim you do, they can seek permissive intervention or they can just file their own claim. The point of Rule 24a2 is that there's a potential injury from the disposition of the lawsuit to the person who's trying to intervene and their interests are not represented. Sotomayor, which doesn't make any sense under Article III, which is that there's a potential injury from the disposition of the lawsuit to the person who's trying to intervene and their interests are not represented. The question is the one about whether the existing party is adequately protecting your interests. Let's assume they've hired the best lawyer in the world and they've made every conceivable argument, but you're still a contract vendor with the kind of potential injury that the others assume would give you standing. Why is it that we then read Article III into Rule 24? Well, tell me if I'm not getting your question, but in our view, Rule 24a2 requires a showing of Article III standing. And in addition, you have to show timeliness and inadequate representation. And so in those two ways, it's a higher hurdle than Article III is. But that's appropriate because it is a person trying to come in and sort of intrude on an existing lawsuit, and there you need to show that you really need to be able to come in because otherwise your interests are going to be impaired by the lawsuit. So we think the ultimate question under Article III is really the same as the ultimate question under Rule 24a2. Under Article III, if you're asking whether a person can initiate a lawsuit or can appeal, what you're asking is do they have a substantial enough interest in the outcome of this actual dispute. And it's really the same inquiry under Rule 24a2. Do they have an interest that's just that's this Court has said it has to be an interest that's legally cognizable, that's significantly protectable interest, that's the same language that the Court has used under Article III. Roberts. Thank you, counsel. Mr. Boretsky. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner's effort to turn every intervention motion into a constitutional question is a solution in search of a problem. Article III requires only a case or controversy. It does not speak to the question of who can join an existing case or controversy. So somebody who has no connection, other than that they're very interested in the subject. It's an environmental case. The Sierra Club wants to be involved. It's all right to allow them to intervene as a party, because there is a case or controversy. They don't, you know, they wouldn't satisfy Article III standing, but they don't have to, according to you. So their views might be valuable, their participation in, you know, depositions, discovery, all might help the Court. So why not? Mr. Chief Justice, Rule 24a2 would not allow the party that you just described. No, no, I know, but I'm asking a constitutional question, putting aside exactly what the rule is. If you say all there has to be is an existing case or controversy, and once there is, you don't care whether the person has standing, Congress could pass a statute saying anybody who the Court thinks is appropriate, you know, an expert in the area, qualified, with a record or whatever, they can jump in and participate as a party, and you would say that's okay. Article III would not speak to that particular bad idea by Congress. Not that I can't tell whether that's a yes or a no. That is a yes. That type of proceeding is okay. Constitutionally, it is okay. Rule 24 does not authorize that. If Congress were to do something like that, district courts would have ample tools, the same as the tools they use now, to manage multiparty litigation and to prevent these hypothetical interveners from taking the case. Roberts I hope I haven't given Congress an idea, but I mean, is that consistent with what we've said, that Article III standing plays an essential role in the separation of powers? Absolutely, because the purpose of Article III, its core purpose, is to prevent courts from issuing advisory opinions about the actions of the political branches absent a need to do so, absent a case or controversy. But what if, as it goes along, the defendant says, well, I'm going to settle with the original plaintiff, okay? You know, he's raised this claim, I'm going to do this, but I'm still going to litigate against the Sierra Club. Is that okay? No, because at that point, there would no longer be a case or controversy for the Sierra Club to participate in, absent its own injury that it was pursuing relief for. The key point under Article III is that its purpose is to prevent the judicial machinery from being mobilized in the first instance and opining on the actions of the political branches. Kennedy, can you give me a hypothetical example of a case where intervention should be allowed because it's important, but there's no Article III standing? Maybe outside of the context of this suit, I think there may be Article III standing. Is there a practical illustration you can give us for why it's very important to allow this intervener under the rules, even though there's no standing? I think defendant interveners are the best example of that, and it doesn't make sense to ask whether a defendant intervener, whether it's an environmental group defending an EPA regulation, whether it's white employees intervening in a discrimination claim to defend the employer's promotion practices. Here, of course, we have a plaintiff intervener, correct? Yes. Can you give me an example of that outside of the context of this case? Sure. So an example might be the plaintiffs in Clapper did not have standing, because there was no evidence in that case that their interest in not being surveilled was actually being infringed. If, hypothetically speaking, you had a resident of a house who was being surveilled or plausibly alleged that he was being surveilled, perhaps the roommate of that individual, whose cell phone was not presently being wiretapped, whose movements were not presently being tracked, would have an interest under Rule 24. That interest might well be impaired or impeded if the wiretapping program as to the house were judged constitutively not. Well, I'll look at Clapper. As I recall, they said that they were threatened, they were chilled. Yes, and I'm just building a hypothetical off of Clapper, so looking at Clapper won't perfectly track this. But the difference is that the plaintiffs were not surveilled. We've said it with respect to union members. We've permitted to intervene, even though the union has all of the claimed contract rights. In the Tribovich case, that's right. Yes. What the Court recognized in Tribovich was that the union member could intervene not to assert separate claim or relief, but to present arguments, to potentially present evidence, and to protect the union member's interest in that case. And would they lack Article III standing? Well, the union member in Tribovich would lack Article III standing because of the particular statute at issue there in which Congress authorized only the Secretary of Labor to bring suit. No, but that's not an Article III question. That's a merits question. That's the scope of the claim. So that would certainly be a situation where the union member would not have a cause of action. But presumably if Congress had authorized a cause of action, we'd have to look at the union member's particular harm. Alitoso, could I come back to Justice Kennedy's question? Can you give me a real case where there is – where you believe that the requirements of 24A2 are met, but there is not, there was not Article III standing? So again, I think the defendant intervener examples are the plaintiff interveners. So let me talk for a moment about this case. We absolutely have standing in this case because we are the purchasers of the property. If you actually go through all of the agreements and go through New York law about ownership interests, it does get complicated. Again, we – the interest that we have is not a contingent one. As the Second Circuit recognized, we're actually the equitable owner. But let's say that in parsing through all of these agreements and all of these facts, it were determined that legal title is the key to having standing to pursuing a regular takings claim. Again, I don't believe that that ought to be the outcome here. But if you had such a situation, we would have a sufficient interest, even if as a technical matter we lack legal standing, our equitable ownership interest would be a sufficient one to be protected under Rule 24. It would be impaired if we were absent from this litigation, and we ought in that situation to be allowed to intervene. Roberts The Second Circuit assumed otherwise, right? It decided this case on the assumption that there wasn't Article III standing, right? It didn't – it did not decide the question on that assumption. It simply did not reach the question of whether there was Article III standing or not. The district court had held, incorrectly we believe, that we lacked standing. And what the Second Circuit held was that the district court was wrong as a matter of law to require that inquiry in the first place. Right. Well, so now you're arguing before us that, in fact, you do have Article III standing. So that if we agree with you, the Second Circuit decision that it's not necessary would stand, right? It would. We either – The question you want us to decide is a real estate law question under New York law. Well, I'm not asking you to decide that question. I was trying to respond to the hypotheticals about a plaintiff who would lack standing. How does a defendant have standing? How does that work? What the government says is a defendant has standing because the judgment in the case may affect an interest of the defendant, a significant interest. Is that right? That's not an Article III standing inquiry. And, in fact, the Article III standing inquiry I mean, I don't see any more with a defendant how you can find a defendant without standing on that basis. I mean, the reason I find it relevant is because I think the other side is arguing that an intervener has to have standing in the sense that a defendant has to have standing, at least when you intervene on the side of the defendant, as most do. So, first of all, it doesn't make sense to speak about whether a defendant intervener has standing because a defendant intervener is not the one who is alleging an injury and invoking the authority of the court. Second of all, it's not that we can't – Can we write an opinion and say the only people who have to have standing – I mean, you don't know how to write this opinion unless you're talking about standing in general. Yes or no on that. And why can a defendant invoke the court's power on appeal, for example, subpoenas, discovery, where defendants all the time invoke the court's power? And how can they do that if they don't have – I don't know even how to phrase the question, but you see what I'm driving at. I think what you're driving at is the difficulty of writing an opinion that applies a standing inquiry to – No, not the difficulty of writing an opinion. I want to know, is there such a thing as defendants having or not having standing? And if there is such a thing, why and how? And if you don't know the answer right away, have you ever read anything on the topic? And what would you recommend? The only sense in which there is defendant standing does not apply here. Courts have recognized defendant standing in two circumstances, where defendants are appealing and thereby invoking the jurisdiction of a new court, and where defendants are asserting counterclaims and thereby acting as plaintiffs. Breyer, what about when they ask for a subpoena to be enforced? I can't go in and you can't – well, people can't just go in randomly and say, I'd like to have a subpoena enforced against so-and-so. No, of course not. And a defendant can do that as part of an Article III case or controversy once there already is an existing case or controversy. Let's put that aside the question of intervention. How can a defendant not have standing? I mean, I'm – somebody sues me, so they're dragging me into court. I don't want to be in the court. I'm there because I'm the defendant. And then the court is going to turn around and say, well, you have to leave because you don't have standing. How can that possibly be? Most defendants would be happy to accept that. And the anomaly that you're pointing out is that you can't go on without me. The anomaly that you're pointing out is precisely why it doesn't make sense to ask the question whether defendants have standing. Once there is a case or controversy, the judicial power extends to all of it. That includes discovery requests, subpoena requests, and whatever else by participants in that case or controversy. To get back to Justice Breyer's question, the reason that standing as an inquiry does not work in particular for defendant intervenors is that there are two contingencies before a defendant intervenor can even be said to be injured. The first is that the district court has to rule in a way that the defendant intervenor doesn't want. And the second is that then the defendant intervenor has to actually be harmed by that, as opposed to the defendant intervenor simply having an interest that may as a practical matter be harmed by that. Breyer. That brings me back to my original question. Fine. A defendant can go and get subpoenas and so forth, but if he has a counterclaim, that's different, and he has to show standing. So why don't we apply the same standard to the intervenors? The intervenors have to be like defendants in respect to intervening on the decide – on either side. They can get subpoenas, et cetera, but if they want something that somebody else doesn't want in this case, then they have to have standing. I think this goes to the question of what is the standard for having standing. In other words, what is it that you might want to do differently that would require you to have standing? And the only thing that you might want to do differently that would require standing is asserting a different claim or seeking a different form of relief, not making a different argument, even potentially injecting a constitutional argument the way amici do, and not seeking discovery or subpoenas, because those are not a claim or form of relief with which Article III is concerned. But the plaintiff in this case, by way of relief, seeks a money date, and the plaintiff wants damages for the taking. That's its complaint, page 122 of the Joint Appendix. Your client, page 162, wants damages for itself. That's something that the plaintiff could not have had standing to obtain for your client. Why isn't that a form of additional relief where an intervenor wishes a judgment against the defendant directly in its favor that would be enforceable through all the mechanisms of post-judgment, garnishment, liens, et cetera, and would offer your client claim preclusion effect, not just nonmutual issue preclusion, for example? It seems to me like that is a different form of relief, isn't it? Justice Gorsuch, the way in which this case has been litigated, and trial counsel conceded this in the Second Circuit, I'll represent it to you here today, we are not  We do not seek separate relief only in our name. Well, except for the complaint expressly says that. The complaint says that, but oftentimes the complaint says one thing, and over the course of the litigation, the theories might develop differently, and the way in which we are at this point seeking relief here is relief to recover for Sherman. We will, at a later date, need to figure out how we'll get that money from him, and we would either need to potentially settle that claim or have standing to bring our own claim in Federal court or in State court to get the money from him. But the reason that you're disclaiming the relief sought in your complaint? We are disclaiming Is there any relief you're seeking at this stage? Well, the relief that we are seeking is to maximize Sherman's recovery, because we have a stake in that recovery, and it's a stake that Rule 24a2 protects and gives us an ability to intervene, to defend. Would you agree, though, that if an intervener did seek relief in its own name, that that would be relief beyond that which the plaintiff would be entitled to provide? I mean, after all, a plaintiff normally doesn't have standing to seek a judgment in someone else's name. So would you agree in the normal case that we'd have a problem here? If by the normal case you mean a situation where an intervener comes in and asks for either additional money or money to be paid separately? Or just a judgment in its favor. So whether it's a judgment in its favor, I think, depends really on the scope of the judgment. This Court has repeatedly affirmed judgments in favor of plaintiffs without inquiring into their standing once it had assured itself that at least one plaintiff in the case had standing. So just the issuance of a judgment would be an inconsistent standard with this Court's settled jurisprudence. Now, under the Petitioner's theory of this case, every exercise of judicial power I'm sorry for interrupting, counsel, but if you'd just answer my question, I'd be grateful. If a plaintiff seeks a judgment in its own name, can't seek it for an intervener, agree? If the question is whether the judgment requires the defendant to do it. A plaintiff can seek a judgment against the defendant in someone else's name. Generally not, right? That's not a trick question. Generally not. Okay. So if an intervener then seeks a judgment in its name, generally speaking, that's asking for relief beyond that which the plaintiff has standing itself to provide. Right? Not necessarily, and not the way this Court has considered the question in numerous cases where it's affirmed judgments in favor of parties without standing, or at least without inquiring into their standing. I'll let you go. Well, I'm assuming that the leading case you have where the Court has granted the plaintiff a judgment in favor of a party without standing, other than Turbovich putting that aside. In Department of Commerce v. U.S. House of Representatives, Clinton v. New York, Boucher v. Siner, these are all cases where the Court has expressly said we satisfy ourselves of the jurisdiction of the standing of one plaintiff and need not inquire further. Well, no, no, I know that, but, I mean, that's the – those cases are distinct in that the Court's saying we need not inquire further because those are separate parties, but they're all seeking the same relief. It may be necessary at some point for the Court to inquire further if it determines that the party is seeking to exercise authority beyond Article III. Sure, you don't have to decide cases that might never come up, or issues that might never come up, but I don't see how that helps you. No, and we agree that if, in fact, an intervener, if we ourselves came in at a later date, filed an amended pleading, and said now we are seeking additional damages in our own name, that at that point an Article III inquiry would be required. But the point is that so long as we are not seeking a separate claim or separate relief, no inquiry into standing is required, and that is what this case – this Court's cases support. Well, no, but then the question comes upon if you are then exercising the authority to issue subpoenas with respect to other parties, you're exercising the authority of the Court in a way that expands beyond what the particular plaintiff was seeking. You are, but you are not exercising the authority of the Court in a way that's relevant to Article III because you're not seeking a separate claim or a separate form of relief. What Article III is concerned about is that the purpose of Article III is not to micro manage the conduct of litigation and how litigation is conducted. It's to prevent courts from interjecting themselves into a controversy in the first place. Roberts That's the argument in your brief. You focus on case or controversy. There has to be a case or controversy. But we have said repeatedly that Article III standing is an element of the case or controversy requirement. And so I don't know how you can put Article III standing to one side while saying it's okay because we still have a case or controversy. Dabney Article III standing is an element of the case or controversy requirement or an interpretation of the case or controversy requirement. But the requirement that this Court has imposed in order to have standing is an interest that is injured imminently or concretely has been injured, traceability and redressability, all with respect to a particular claim in a form of relief, not with respect to things that happen along the way in litigation. Roberts No, with respect to a particular party. You don't just ask, is there an injury? You said, has the plaintiff been injured? You don't just ask, is there redressability? You said, is his injury redressed? I don't see how you can just carve off one part of the test for standing. Dabney Well, I think the reason for carving it off, again, goes back to the purposes of Article III, which are not to police every single exercise of judicial power. When an amicus comes into court, it potentially introduces a new issue, a new constitutional question. In this case, the government has introduced a Rule 24 issue that we've responded to. Each of those is a form of asking the Court to use its power, power to resolve the case a certain way. Kennedy But we're talking about mandatory intervention. The district intervention must the Court must permit anyone to intervene. And then there's this requirement of there be a practical interest and so forth. It seems to me you're going to have to, in order just to protect the courts against party command, you're going to have to make an inquiry that looks very much like standing anyway. Dabney So I think this goes to a key premise of the Petitioner's argument that I want to make sure to clarify. The Petitioner is arguing that once an intervener comes in as an intervener of right, as of right, there can essentially be no limits on what that intervener can do. And that's simply not true. The advisory committee notes make clear that restrictions can be placed on interveners as of right. We cite numerous cases in our brief in which courts have recognized that they can limit the discovery of interveners as of right. Certainly, they can limit them from asserting claims and additional forms of relief. And in fact, courts are used to doing this in multiparty litigation all the time, including preventing multiple plaintiffs and multiple interveners from seeking any unilateral discovery at all. So this notion that once an intervener is allowed in, that the intervener will simply be able to do whatever it wants and take the judicial power in different directions, this is why I started out by saying this is this constitutionalization of every intervention motion is a solution in search of a problem. This is simply not a problem in real world courts. District courts have ample tools to deal with the parade of horribles of having an intervener come in and potentially take the case – take the case in different directions. Ginsburg. Suppose somebody was a plaintiff and was dismissed for lack of standing. That same person could come back into the case as an intervener and that's your position? In theory, if the person satisfied the requirements for an interest that may be impaired and so forth under Rule 24, then yes, but not just any plaintiff could then come back in as an intervener. But you have to meet the 24a requirements, of course. Yes. Which are stringent. Exactly. Exactly, Justice Ginsburg. The Petitioner's contrary theory here that Article III polices every action of every court is contrary to a number of settled principles. One, I mentioned it's contrary to the one-plaintiff rule, which this Court has applied repeatedly. If it were not possible for a court to issue a judgment even in favor of a plaintiff without standing, then this Court has been wrong for decades to be doing exactly that. Second of all, and I think this goes back to Justice Breyer's point earlier, it would require constructing an entirely new defendant-intervener standing doctrine, that whatever it is, it is not standing as we think of it. A defendant-intervener, first of all, will be injured only if there is a judgment that goes a certain way, and even then will not necessarily actually be harmed by the judgment, depending on whether his or her interests actually are impaired. The standard for Rule 24 intervention is simply whether the interest may as a practical matter be impaired. That is not standing. Standing requires an actual or an imminent injury, not this conjectural injury twice a day. But on the defendant side, I mean, on the defendant side, why can't we just have a simple – it's defendants are there because the court might affect their – their behavior, do something they don't want to do, or affect their property in a way they don't want. And an intervener on the defendant's side, why not just interpret the rule that way? That's what the government says. It has to show the same. An intervener on the plaintiff's side doesn't have to show anything, unless they want something. Other than the rule, I mean, you know, unless they want something that the plaintiff doesn't want. That's where I started, the government saying interpret the rule this way, and you object to that because? Because Rule 24 and Article 3 serve different purposes, as reflected in Rule 24's distinct language. With respect to the purposes, Article 3 is about ensuring that Federal courts do not intervene in controversies absent a live dispute. Rule 24 ensures that once there is a live dispute, once there is a case for controversy, parties whose interests may be affected can participate in order to protect their rights, in order to avoid additional litigation later on. So these are different purposes, and they are reflected in the language of Rule 24, which does not speak in terms of standing. The key point is that Rule 24 allows an intervener to intervene if the intervener's interests may, as a practical matter, be impaired or impeded. That is different than the stringent requirements for standing, which require an actual or imminent injury, not just may as a practical matter. Traceability and redressability, likewise, do not track onto the language of Rule 24. For Article 3 standing purposes, you need to have an injury that is traceable to the defendant's conduct. For Rule 24, it simply needs to be related to the subject matter of the litigation. Likewise, with redressability, for Article 3 purposes, there has to be an ability by a court to directly redress the injury and thereby bind the defendant to a legal judgment. For purposes of Rule 24, again, it's not that the nexus is not – is different than that. It's simply whether the intervener might potentially be aided in its ability to protect his interest. These are all looser standards than Article 3. Congress has enacted Rule 24 in 1966, but has amended it four times since then, including as recently as 2007. So there has been ample opportunity for Congress, the advisory committee, this Court reviewing the rule, to take account of modern standing doctrine. Yet the language of Rule 24a has been allowed to stand using very different terms than the standing inquiry. And so there's some – Sotomayor, let's assume, for the sake of argument, that – because I think as I read the district court's opinion here, they assumed you were asking for a judgment in your name, because they were treating you as a contract vendor or vendee, and they were saying you don't have the right to have a judgment in your name. Would that holding have been wrong, absent your current concession, that you are not seeking money in your own name, but just a payment of money? Justice Sotomayor, that was not the state of play before the Second Circuit. And we quote in our brief, this is at page 54 of our brief, and this is just a quote from the appellate lawyer in the Second Circuit, there is, quote, exactly one fund, and the town doesn't have to do anything other than turn over the fund. And that's why the Second Circuit correctly found, and this is Petition Appendix 9a, that Lareau, quote, asserts the same legal theories and seeks the same relief  Sotomayor, I've asked a different hypothetical. I don't know that the court below understood your claim that way. So when it ruled, it ruled understanding that you were following your complaint and seeking a judgment in your name. You disavow that in the Second Circuit. They accepted that disavow, and they've ruled a slightly different way. I'm saying, if you hadn't, would this be the same case? If we hadn't, it would be a different case, but I think the court And what would happen if it were a different case? If it were a different case and we were asking for money in our own name, I think in Article III, standing inquiry would be appropriate in that situation, and for reasons that So your rule is always, on a motion to intervene, there is a standing inquiry. The standing inquiry is whether or not you're asking for relief different from someone with a case of controversy. I would put it slightly differently, which is, whether or not there needs to be a standing inquiry depends on whether the intervener is seeking relief or asserting a claim different than the existing plaintiff. Let's use a hypothetic. I'm sorry. A number of Federal prisoners are similarly situated with respect to a claim that they're not being provided food consistent with their religious beliefs. One brings a claim. He wants relief as to him, because that's what he can seek relief for, right? Then we have 80 join him. Can they join him so long as they simply say, we want him to get his meal? Or if they seek meals in their own name, a judgment running as to them, do they have to show standing at that stage? I think it depends on what relief the initial plaintiff is seeking. If he is seeking a declaratory judgment or an injunction invalidating the prison's entire meal program, then I think they can join. If he is seeking an injunction saying he individually is entitled to a particular type of food and they would like that judgment to extend to them, they need at that point standing, because they're asking the defendant to do something different, not only to provide him with particular food, but also to provide it to them, whereas otherwise the defendant would not be free to do that. So I think it requires a careful parsing at the end, either on the papers or at the time of the intervention. But to the extent he's seeking relief only in his own name, an as-applied challenge. If it were an as-applied challenge, then an additional plaintiff would need to show standing, because the question, again, is what is the court ordering the defendant to do? That's the touchstone for the relief. And if an additional plaintiff is asking for different relief, then it requires standing. Roberts. Thank you, counsel. Mr. Katyal, four minutes. Katyal. Thank you, Mr. Chief Justice. Three points. First, a 24A2 mandatory intervener is a full party and can send thousands of subpoenas or document requests without the court ever finding out about them. Are there cases in which courts have controlled 24A2 interveners? There are not. The court cannot restrict. And this is, you know, what Stringfellow says. It's what she said. I think we were just told that courts have. In practice, courts have limited 24. They can limit it in the same way as they can limit parties, but they can't ban discovery altogether from a party, nor can they make an A2 intervener. But I can say now, counsel, we have lead counsel taking these depositions. We're not going to let you take the same depositions. The courts do that all the time. Sure. They can do that. They could say, but at the point where they are restricting a full party, like an intervener, from doing anything independently, they're no longer an A2 intervener. At that point, Justice Kennedy, they are a permissive intervener at best, or they're an amici. They're not doing anything. And that gets to, I think, a fundamental point, Justice Kennedy. Well, I don't want to take up your time. But it does seem to me that district courts have very substantial control over what mandatory parties can do in the way of duplicative and oppressive discovery. It happens all the time. We don't disagree with that. Our only point is that they have much more power over 24B than they do over A2. And at the point where they're coming in and saying, we're going to do everything exactly the same way, either because the court has imposed that restriction on them or otherwise, they aren't, at that point, an A2 intervener. And that gives rise to, you asked Justice Kennedy, my friend on the other side, what are we giving up? When do we ever need these kinds of interventions? And he gave you two answers, neither of which dealt with the fact that amici and permissive intervention provide for that participation. His first answer was Tribovich. Tribovich is a case in which that union member had Article III standing. So, you know, that would have been screened out by our rule anyway. The second thing he gave you was Clapper and a long thing about a roommate that, you know, might want to have a grievance here. That, to me, boomerangs. That shows exactly what our point is. He wants them to raise interveners, A2 interveners, to raise stuff that parties legitimately can't raise because of Article III standing. And the only support he can have for that, there's no support in the Constitution, the only support is page 30 of his brief where he's admitting that's what he wants interveners to do. And, Justice Breyer, that is what interveners are doing right now. The national county's brief explains that ideological interveners are coming in now, concerned bystanders like the Sierra Club or Club for Growth. It doesn't matter ideologically, but it's just the point is that that's happening right now because of A2 intervention status, and that's why you need some sort of up-front restriction on a threshold inquiry. And then this is my last point, which is it gets to the Chief's question about why would you need to have a threshold inquiry. And I think the best reason is what the answer to Justice Gorsuch was given at Joint Appendix page 162. Joint Appendix page 162 says, They are seeking a pot of money for themselves. That's what the complaint says. Now, my friend now has disclaimed that before this Court. That, by the way, is not the disclaimer before the Second Circuit. The disclaimer before the Second Circuit is we want the same pot of money, but we still want a court order for ourselves. And that is an invocation of judicial power. That's exactly what A2 intervenors do all the time. And if you accept his rule and you don't have that threshold inquiry, you allow for this protean shifting of a case to the point where, and I'll just read to you from Joint Appendix page 162, this is what the complaint asks for. Laureau prays that this Court grant judgment against the defendants, awarding it damages and other appropriate relief as follows. A, an award of compensation for the taking of the lawyer's interest, and B, such other and further relief. He's disclaimed, A, I don't know what B is anymore. This can't be the right way for courts to proceed. The right way for courts to proceed is a threshold standing inquiry at the front end which confines them to party status. Roberts. Thank you, counsel. The case is submitted.